## KNY–SCHEERER CORPORATION v. AMERICAN STERILIZER CO. et al.
### No. 5549.

District Court, E. D. New York.
July 23, 1932.

Clarence G. Campbell, of New York City, for plaintiff.

Williams, Rich & Morse, of New York City (H. C. Lord, of Erie, Pa., and G. Willard Rich, of New York City, of counsel), for defendants.

MOSCOWITZ, District Judge.

This is a suit in equity for the alleged infringement of claims 1, 3, 11, and 12 of the Holmes patent, No. 1,769,836, granted July 1, 1931.

The patent relates to an improvement in a water feed control. Plaintiff's title to the patent in suit is not in dispute, it was conceded on the trial that, if the patent is valid, it was infringed.

Claims 1, 3, 11, and 12, which are relied upon by the plaintiff, are as follows:

"Claim 1. A water feed device adapted to deliver water from a source of supply to a sterilizing receptacle, provided with an air gap across which water will be projected to the receptacle under full flow but down the side of which water will run adhering to the side thereof under slow flow such as produced by a leaky valve whereby water will only be added to said sterilizer when it is desired to do so."

"Claim 3. A device adapted to deliver water from a source of supply to a receptacle, provided with an air gap across which water will be projected to the receptacle under full flow but down which water will run under slow flow such as produced by a leaky valve, the water supply conduit to said device having a vacuum-breaking air inlet port whereby contamination from said receptacle is prevented from reaching said water supply."

"Claim 11. A water feed device adapted to deliver water from a source of supply to a sterilizer, provided with an air gap across which water will be projected to the sterilizer under full flow but down which water will run under slow flow such as produced by a leaky valve, the water supply conduit to said sterilizer having a vacuum breaking means."

"Claim 12. A device for delivering water from a source of supply to a receptacle comprising a shell provided in its bottom with a waste conduit and provided higher up at one side with a port for delivery to the receptacle, an air gap across which water will be projected into said port and hence into

said receptacle under normal flow, but down which air gap water will run to said waste conduit under slow flow such as produced by a leaky valve."

Defendant claims that the patent is invalid, and that the defendant American Sterilizer Company has independently invented and developed the device of the patent in suit, and that that defendant had a license from the inventor.

The invention is described in the patent as follows:

"My invention relates to an improvement in a water feed control and its novelty consists in the adaptation and arrangement of parts as will be more fully hereinafter pointed out.

"In the following description and in the claims, the term 'tank' is herein used in a broad sense to include a receptacle for receiving water from a source of supply such as a city water main.

"In the present state of this art, it is the usual practice to fill such tanks by supply connections arranged to deliver into the tank below the high or normally maintained water level in the tank. In such arrangements, should the house supply be shut off and drained or if, for any reason, partial vacuum should be produced in the supply pipe, there will be produced a back-flow of water from the tank into the house supply pipes. If the water in the tank is chemically treated or if polluted in any way so that it is not a good drinking water, the back-flow into the tank and into the house pipes becomes a very serious matter. In fact, serious results have followed from back-flow such as just indicated.

"Also, if the valve in the supply pipe should leak, there would be a slow flow of water from the supply, assumed to be the city water supply, into the tank and if the water in the tank should be sterilized water such as used in sterilizers, such leakage would, as is obvious, be a serious matter. In the above indicated hitherto used arrangements for supplying water from a source such as city water to a tank such as a sterilizer, for example, other undesirable actions have also been present, all of which, as well as those noted, are overcome or eliminated in my improved water feed control.

"Among the improved actions obtained in my water feed control herein disclosed and claimed the following four may be mentioned.

"Under normal flow of water from the supply pipe to the tank, such as produced when the valve in the supply pipe is purposely opened, the water will be delivered from the supply pipe to the tank through a primary water-sealing trap and across an air gap, the water level in the tank will be maintained at a predetermined level, and overflow from the tank will run to the drain pipe through the air gap.

"Under a very slow flow of water from the supply pipe such as produced by a leaking valve or a valve not tightly closed, the water will flow not into the tank but to the waste pipe through the air gap and preferably also through a secondary water-sealing trap.

"If, for any reason, there should be a partial vacuum produced in the water supply pipe, such as would tend to produce a back-flow of water from the tank to the supply pipe, such back-flow will be prevented by an inflow of air through a vacuum-breaking air inlet provided in the delivery device and above the water level in the water-sealing traps.

"When a connection is made to a vacuum-creating device or to the atmosphere for the discharge of steam or vapor generated in the tank, such connection is made to the tank through the delivery device on a path that leads between the two traps so that the steam or vapor will not be delivered into the room."

The patent relates to a water feed control for sterilizers. The patent covers a water feed and air break combined used in connection with an open type of sterilizer such as is used in hospitals and in physicians' offices.

The patent provides a protective means for a possible contamination of water at two points, the water flowing through a control valve, which, when the pressure is in toward the sterilizer, the contamination is avoided in the sterilizer by means of an air gap, and, if for any reason the pressure is reversed, the flow through the control valve is reversed, whereby a suction is placed on the sterilizer. The air vent elements of the patent protect the pipe lines connected with the sterilizer from contamination.

Prior to the patent in suit, and for about 25 or 30 years, it was the practice to connect a sterilizer directly with the general water supply and the drain. It was found that this would probably lead to contamination of the sterilizer through leaking valves by water being added to the sterilizer after the sterilization had occurred, and also the siphoning of water into the general supply pipes. Contamination occurred through water backing up and causing a suction or siphoning action so that the water was drawn from the sterilizer into the water supply.

There are two problems solved by the patent, one preventing leaking water from entering the sterilizer, and the other preventing water from being siphoned from the sterilizer into the water supply. About twenty minutes is required for the complete sterilization of instruments to be used in an operation. If water drips into the sterilizer when sterilization is not complete or toward the end thereof, contaminated water may be added to the sterilizer so as to affect the complete sterilization of the instruments.

The invention of the patent prevents leaking water from entering the sterilizer, and also prevents water from being siphoned from the sterilizer into the general house supply of water. Two feeds are provided, there is a pipe which terminates in an open end and is flat up against the main drain pipe. This arrangement is in such a position that it is always open so that the air can be drawn. In case of siphoning the air will come in and break that and prevent the water from being actually drawn back of the filling means, and the open spaces will permit the drip to run off the edge and enter the drain without going into the sterilizer. By opening the cock, the water will then reach the sterilizer. In opening the valve, there is a greater flow of water which jumps the gap and then passes into the sterilizer. When the valve is open, the water reaches the sterilizer; when the valve is closed, if there is a drip or leakage, the water does not reach the sterilizer but drips into the drain.

This patent serves two purposes; it prevents contamination of the instruments in the sterilizer, and also prevents siphoning of the sterilizer. The defendant American Sterilizer Company has paid plaintiff's patent a compliment by adopting its invention.

Plaintiff's patent has had a large commercial success. The commissioner of health of the city of Chicago, the city of New York, as well as the United States government has specified the construction of the patent in suit for installation in its institutions.

Dr. Kegel, commissioner of health of the city of Chicago, in the early summer of 1928, called a conference of forty or fifty superintendents of Chicago hospitals, and directed them to have the water supply of their sterilizers connected in such a way that there could be no escape of contaminated water from a sterilizer into the drinking water supply.

The attention of Holmes, the inventor, was called to the suggestion of Dr. Kegel, whereupon Holmes endeavored to solve the problem raised by Dr. Kegel. Holmes, after working for some time, in October, 1928, prepared a sketch of his idea and submitted a device and sketch to his patent attorneys on January 16, 1929. The invention was conceived by Holmes in the summer of 1928, and he made a complete drawing and disclosure thereof to Dr. S. S. Graves on October 23, 1928. On February 11, 1929, Dr. Kegel approved the Holmes drawing. Holmes submitted the invention to the American Sterilizer Company on March 30, 1929. Holmes' completed device of the patent in suit was exhibited at the Catholic Hospital Association Convention in Chicago from May 6 to May 10, 1929. Holmes filed his application for the patent in the United States Patent Office on May 1, 1929. The invention was offered to the American Sterilizer Company by Holmes early in April, 1929, and thereafter the patent was offered to the plaintiff and purchased by it on April 27, 1929.

The defendants contend that the Holmes patent is anticipated by the prior patented and published art, and contend that this is an independent conception and invention by Raymond L. Jewell, designing engineer of the defendant American Sterilizer Company, the Jewell application serial No. 360,236 having been filed May 3, 1929.

Jewell admitted on cross-examination that he had seen and examined the Holmes drawing embodying the device of the patent in suit before he signed and filed his application. The history of the Holmes and Jewell patent applications shows that they passed through the hands of different Assistant Examiners in two different divisions of the patent office.

The Jewell application is still pending, and, were it not for the Holmes patent, valid claims similar to those of the patent in suit could be secured. However, the Holmes patent will bar the Jewell application, as the Holmes application and other succeeding dates are all earlier than Jewell. The reason that there was no interference between Holmes and Jewell was due to the fact that Holmes was ahead of Jewell in his filing date as well as in his date of conception and reduction to practice.

The Pordon patent, No. 1,572,678, pertains to gasoline, which must be caught and brought back. In the patent in suit leaking water enters the waste pipe. Pordon attempted to eliminate the fire hazard by preventing the spilling of gasoline. Holmes prevents water from reaching a sterilizer while sterilization is in process. Holmes was not concerned with the waste of water, but

solely to prevent it from dripping into the sterilizer. Pordon's attempt is to save the gas. The functions of these two devices are different. Pordon does not anticipate Holmes' disclosure.

The Encyclopedia Britannica and Klingler patent, No. 76,399, references operate so that contaminated water would enter the reservoir or container in times of low or slow flow. This was admitted by Thatcher, defendant's expert, who testified:

"XQ61. Now referring to what you have said about the disclosure in the Encyclopaedia Britannica reference and in the Klingler reference, what would happen to contamination of water supply in times of low flow if contaminating matter appeared in the water shed, or source of water? A. The contaminated water in times of low flow would enter the reservoir. We should bear in mind, however, that the contaminated water proceeds in the other direction in these devices we are concerned with."

■ All of the prior art patents and the attempts to prove prior use by the defendant relate only to separate elements of the Holmes patent, and no one of these is adapted to perform the functions of the patent in suit. No one of them anticipate or limit the scope of the patent in suit. Neither the prior art nor anything done by the American Sterilizer Company shows the combination of an air break and an air gap functioning with the supply or inlet valve to protect the sterilizer and the water supply. None of the patents or the prior uses suggest the combination of the patent in suit. An anticipation cannot be made out, nor can a valid claim be limited by selecting part of a disclosure from one patent and part from another, and then by welding the parts together produce an anticipating or limiting structure.

■■ The claim of the American Sterilizer Company that it had a license from Holmes has not been established. Holmes was not a general employee of the American Sterilizer Company; he was employed by the American Sterilizer Company to sell its products in Chicago and adjacent territory on a drawing account and commission basis. During the period of his employment he represented three other concerns. Holmes never consented to the use of his invention by the American Sterilizer Company. The most that can be said is, that he offered to sell the invention.

In order to deprive an inventor of his invention, proof should be strong and convincing that the employee and the employer agreed that the invention was to be the property of the employer. The whole course of conduct between the employer and employee indicates very clearly that there was no agreement or understanding to give the title or license to the patent to the employer. When the patent in suit was submitted to J. E. Hall, president of the American Sterilizer Company, by Holmes, no rights were claimed by the employer in the patent.

■ The patent is valid, and claims 1, 3, 11, and 12 have been infringed.

Decree for plaintiff.

Settle findings of fact and conclusions of law, and decree upon notice.